**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
                                 :

JOSEPH P. LASALA and FRED S.      :
ZEIDMAN, as CO-TRUSTEES of the   :
AREMISSOFT CORPORATION      :
LIQUIDATING TRUST,            :
                                   :
                Plaintiffs,   :
     v.                        :     CIVIL ACTION NO. 05-4520 (JAP)
                                   :
BORDIER et CIE and DOMINICK    :
COMPANY, AG,               :     **OPINION**
               Defendants.   :
———————————————————:

APPEARANCES:

Hal M. Hirsch, Esq.
David Jay, Esq.
Greenberg Traurig, LLP
200 Park Avenue
P.O. Box. 677
Florham Park, New Jersey 07932-0677
      Attorneys for Plaintiffs

William B. McGuire, Esq.
Tompkins, McGuire, Wachenfeld
  & Barry, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4070

Elliot Cohen, Esq.
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
      Attorneys for Bordier et Cie

Anthony J. Laura, Esq.
Paul J. Bschorr, Esq.
John J. Zefutie, Jr., Esq.
Reed Smith LLP
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
     Attorneys for Dominick Company, AG

PISANO, District Judge.

Plaintiffs, Joseph P. LaSala and Fred S. Zeidman, Co-Trustees (the "Trustees") of the AremisSoft Corporation Liquidating Trust (the "Trust"), brought the instant lawsuit against Defendants, Bordier et CIE ("Bordier") and Dominick Company, AG ("Dominick"), two private Swiss banks, on September 15, 2005.  Plaintiffs claim that Defendants aided and abetted the breach of fiduciary duty by former AremisSoft principals, Lycourgos Kyprianou and Roys Poyiadjis and that Defendants violated Swiss money laundering laws.  Defendants have filed respective motions to dismiss this action as preempted by the provisions of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(1), in light of the United States Supreme Court's recent decision in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503 (2006).  They bring the instant motions pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).   For the following reasons, the Court finds that SLUSA mandates dismissal of this case.[1]

---

[1]  Jurisdiction is premised on diversity pursuant to 28 U.S.C. § 1332 and is not challenged in this motion.  However, both Bordier and Dominick have filed motions to dismiss based on lack of personal jurisdiction and forum non conveniens which are currently pending before the Court.  Defendants contend that dismissal under SLUSA, 15 U.S.C. § 78bb(f)(1), is a subject matter jurisdiction inquiry pursuant to Rules 12(b)(1) and 12(h)(3).  See Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 297-98 (2005) ("The SLUSA removal provision . . . 78bb(f)(2) is jurisdictional."); Araujo v. John Hancock Life Ins. Co., 206 F. Supp. 2d 377, 380 (E.D.N.Y. 2002) (holding that a motion to dismiss an action as preempted by SLUSA concerns subject matter jurisdiction and thus, is properly brought pursuant to Rule 12(b)(1)).  Rule 12(b)(1) allows a party to move for dismissal of a case based on lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Rule 12(h)(3) states that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).

However, unlike many actions which are preempted by SLUSA after being removed to federal court based on SLUSA, this case was brought in federal court on diversity jurisdiction pursuant to section 1332.  The Court need not resolve whether this motion is properly brought

## I.       Factual and Procedural History

AremisSoft was a Delaware corporation with its principal place of business in New

Jersey.  On March 15, 2002, AremisSoft filed for bankruptcy pursuant to Chapter 11 of the

United States Bankruptcy Code, 11 U.S.C. § 101 et seq.  Subsequent to the bankruptcy filing, the

Court created the Trust.  The Trust is a Delaware Trust formed pursuant to three orders issued by

the Court in connection with the settlement of the underlying securities fraud class action lawsuit

involving AremisSoft, In re AremisSoft Corp. Sec. Litig., No. 01-2486 (JAP) and the First

Amended Plan of Reorganization of AremisSoft, In re AremisSoft Corp., No. 02-1336 (JAP).

Both the class action settlement and reorganization plan were approved by the Court.

Any and all claims arising out of the purchase or sale of AremisSoft securities from April

22, 1999 through July 27, 2001 and all of AremisSoft's claims arising pre-bankruptcy were

assigned to and for the benefit of the Trust.  The Court appointed Plaintiffs Joseph P. LaSala and

Fred S. Zeidman to act as Trustees of the Trust.  Plaintiffs bring the instant lawsuit in that

capacity.

Plaintiffs claim that from 1998 through 2001, two former AremisSoft principals,

Lycourgos Kyprianou and Roys Poyiadjis[2] issued various false and misleading public statements

and filings with the Securities and Exchange Commission ("SEC") which essentially made

pursuant to Rule 12(b)(1) and/or Rule 12(h)(3).  The parties agree that this motion should be
decided before their other pending motions and thus, the Court decides the instant motion at this
juncture.  The Court's dismissal of this matter pursuant to SLUSA renders all pending motions in
this case moot.

   [2]  Kyprianou was the founder of AremisSoft, a former Chairman of the Board, and Chief
Executive Officer.  Poyiadjis was a former director, Chief Financial Officer, and co-Chief
Executive Officer of AremisSoft.  They are not parties to this instant matter.

AremisSoft appear more profitable and successful that it was in reality. These misrepresentations allegedly caused the market price of AremisSoft stock to be artificially inflated.  Plaintiffs claim that Kyprianou and Poyiadjis sold their AremisSoft stock at the purportedly inflated prices and by doing so, engaged in illegal insider trading by reaping large profits at the expense of the investing public.  By the time the truth about AremisSoft's financial condition was revealed, the price of the company's publicly held shares fell dramatically.  Accordingly, the public investors who purchased the shares at the allegedly inflated prices, approximately 6,000 persons, suffered loss, which, according to Plaintiffs, is estimated at $500 million.

Plaintiffs allege that Defendants Bordier and Dominick, private Swiss banks, substantially assisted Kyprianou and Poyiadjis in concealing this alleged fraud.  According to Plaintiffs, Kyprianou and Poyiadjis employed numerous entities with accounts at Bordier and Dominick to hold and sell their AremisSoft stock.  Further, Kyprianou and Poyiadjis allegedly funneled millions of dollars of their proceeds from their AremisSoft stock sales through the accounts at Bordier and Dominick.  In addition, Plaintiffs claim that Kyprianou and Poyiadjis used accounts at Bordier and Dominick to substantiate sham corporate transactions that they created in an effort to disguise their fraud.

Specifically, Plaintiffs' claim that in assisting the activities of Kyprianou and Poyiadjis, Defendants Bordier and Dominick (1) aided and abetted the breaches of fiduciary duty to AremisSoft shareholders committed by Kyprianou and Poyiadjis; and (2) violated Articles 305ter and 305bis of the Swiss Federal Code of Criminal Law and various provisions of the Swiss

Money Laundering Act.[3]

Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3).  They claim that Plaintiffs' claims are preempted by SLUSA.

**II.    Legal Discussion**

**A.    History of SLUSA**

Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), codified in part at 15 U.S.C. §§ 77z-1 and 78u-4, in 1995 in response to a perceived harm to securities markets from frivolous private federal securities class action lawsuits.  See, e.g., Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1510-11 (2006); Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 298 (3d Cir. 2005).  The PSLRA provided more stringent procedural and substantive requirements on such lawsuits.  See, e.g., Dabit, 126 S. Ct. at 1511; Rowinski, 398 F.3d at 298.  Unfortunately, an unintended consequence of the PSLRA was that plaintiffs began avoiding federal courts altogether.  See, e.g., Dabit, 126 S. Ct. at 1511; Golub v. Hilb, Rogal & Hobbs Co., 379 F. Supp. 2d 639, 642 (D. Del. 2005).  Instead, they increasingly brought suit under state law, often in state courts. See, e.g., Dabit, 126 S. Ct. at 1511; Rowinski, 398 F.3d at 298.

In response to the loophole left open by the PSLRA, Congress enacted SLUSA, which essentially designates federal courts as the exclusive venue for class action securities litigation. See 15 U.S.C. § 78a (stating that SLUSA attempts "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the PSLRA);

---

[3]  Plaintiffs claim, and Defendants at this juncture do not dispute, that there is a private right of action available to Plaintiffs under these provisions of Swiss law.

6

Golub, 379 F. Supp. 2d at 642 ("To close this 'loophole', Congress enacted SLUSA, which designates the federal courts as the exclusive venue for nearly all such claims.").

SLUSA achieves this objective by authorizing the removal and federal preemption of certain state law securities class actions brought in state court. See Rowinski, 398 F.3d at 298. SLUSA preemption applies where (1) the matter is a "covered class action"; (2) based on the statutory or common law of any State; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security.[4] See, e.g., 15 U.S.C. § 78bb(f)(1); Golub, 379 F. Supp. 2d at 642. The definitions of these terms, some of which are in dispute, are explained below.

Although courts, including the Supreme Court in Dabit, speak in terms of "SLUSA preemption," SLUSA does not technically preempt state law causes of action. Instead, it "denies plaintiffs the right to use the class action device to vindicate certain claims." Dabit, 126 S. Ct. at 1514. The effect of SLUSA is to require securities claims to be brought in federal court pursuant

---

[4] The statute explicitly provides that "no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or federal court by any private party alleging (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security. 15 U.S.C. § 78bb(f)(1).

A "covered security" is, among other things, a security traded on a national exchange. See 15 U.S.C. § 77r(b); Golub v. Hilb, Rogal & Hobbs Co., 379 F. Supp. 2d 639, 644 (D. Del. 2005). This element is not in dispute. AremisSoft securities were traded on NASDAQ and registered with the SEC.

Further, although Plaintiffs argue that they do not allege that Defendants made any misrepresentations or omissions of material fact, they do not dispute that should the Court find that the requisite misrepresentations or omissions are alleged, they were made "in connection with the purchase or sale of a covered security."

to the federal securities laws, such as SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated

pursuant to section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).  Section

10(b) and Rule 10b-5 prohibit deception, misrepresentation, and fraud "in connection with the

purchase or sale of any security."  See Dabit, 126 S. Ct. at 1509.  Such claims would be subject

to the heightened substantive and procedural standards set forth by the PSLRA.  The alternative

for potential plaintiffs is to bring state law claims individually or as part of a lawsuit not falling

under SLUSA's definition of "covered class action."[5]  See Dabit, 126 S. Ct. at 1514.

**B.    The Supreme Court's Decision in Merrill Lynch, Pierce,
        Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503 (2006).**

The United States Supreme Court recently handed down a significant decision in the

SLUSA context.  In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503

(2006), the Court was faced with the issue of whether SLUSA preempted state law class action

claims, in this case, under Oklahoma law, which a holder-plaintiff lacked standing to bring

pursuant to section 10(b) and Rule 10b-5 under the Court's previous holding in Blue Chip

Stamps v. Manor Drug Stores, 421 U.S. 723 (1975).  In Blue Chip Stamps, the Supreme Court

held that the private right of action under Rule 10b-5 is limited to purchasers and sellers of

securities, and thus, does not extend to mere holders.   See Blue Chip Stamps, 421 U.S. at 731-

33, 749.  Accordingly, holders of securities lacked standing to bring claims under Rule 10b-5.

The Court found that this rule would help curb the special risk of vexatious litigation posed by

---

[5] Plaintiffs argue that the beneficiaries of the Trust cannot bring individual state law
claims in state court against Bordier and Dominick because they assigned their potential causes
of action to the Trust.  Thus, according to Plaintiffs, if the Court finds that Plaintiffs' claims are
preempted by SLUSA, the beneficiaries are left with no remedy on these claims.  The Court has
considered this argument and notes that the beneficiaries chose to assign their claims to the Trust.
Thus, their remedy is derivative of the Trust's ability to proceed here.

securities holders.  See id. at 739.

The Dabit Court took a broad view of SLUSA and found that even though the plaintiffs

lacked the requisite standing to bring a federal securities claim due to their status as holders, as

opposed to purchasers or sellers of securities, their state law class action claims were still subject

to dismissal under SLUSA.  See Dabit, 126 S. Ct. at 1512-15.  The Court reached this conclusion

by finding that the SLUSA requirement that the fraud be "in connection with the purchase or sale

of a covered security" mirrored the requirement as stated in Rule 10b-5.  See Dabit, 126 S. Ct. at

1513; see also Rowinski, 398 F.3d at 299 ("This language [a misrepresentation or omission of a

material fact in connection with the purchase or sale of a covered security] mirrors existing

federal securities law under § 10(b) and Rule 10b-5.").  The Court found that in Blue Chip

Stamps, by holding that the private right of action under Rule 10b-5 was limited to purchasers

and sellers of securities, the Court was not defining the phrase "in connection with the purchase

or sale" under Rule 10b-5.  See Dabit, 126 S. Ct. at 1512.  Instead, the Court was defining the

scope of a private right of action under Rule 10b-5 based on policy considerations.  See id.

The Dabit Court stated that when the Court has previously given meaning to the phrase

"in connection with the purchase or sale" pursuant to Rule 10b-5, it has interpreted such

language as requiring only that the fraud " 'coincide' with a securities transaction — whether by

the plaintiff or by someone else."  Dabit, 126 S. Ct. at 1513 (citing United States v. O'Hagan,

521 U.S. 642, 651 (1997)).  The Court therefore concluded that the requisite showing for SLUSA

preemption is "deception 'in connection with the purchase or sale of any security,' not deception

of an identifiable purchaser or seller."  Id. (citing O'Hagan, 521 U.S. at 658).  Accordingly, in

Dabit, the Court held that the state law holder class action claims were preempted by SLUSA,

9

despite the fact that the class members lacked standing to bring Rule 10b-5 claims.  In so

holding, the Court emphasized that "the magnitude of the federal interest in protecting the

integrity and efficient operation of the market for nationally traded securities cannot be

overstated."  Id. at 1509.

      In this case, there is no Blue Chip Stamps problem.  Presumably, since Plaintiffs

represent a class of purchasers and sellers of AremisSoft stock and not a class of holders,

Plaintiffs would have standing to pursue Rule 10b-5 claims against Defendants if they desired to

do so.  However, Plaintiffs in this case lack a federal securities remedy for a different reason.

Plaintiffs presumably have not brought Rule 10b-5 claims against Bordier and Dominick because

to do so, they would need to show that these Defendants made fraudulent misrepresentations or

omissions which harmed Plaintiffs.  See, e.g., Central Bank of Denver, N.A. v. First Interstate

Bank of Denver, N.A., 511 U.S. 164, 177-78 (1994); In re Tyson Foods, Inc., No. 01-425-SLR,

2004 WL 1396269, at *8 (D. Del. June 17, 2004) (holding that corporate principals were not

liable under section 10(b) because they did not make or substantially participate in any

misrepresentations or omissions).  In this case, it was Kyprianou and Poyiadjis, not Bordier and

Dominick, who actually made the purported misrepresentations.  Thus, to the extent that anyone

violated section 10(b) and Rule 10b-5 under the circumstances of this matter, it was Kyprianou

and Poyiadjis, not Bordier and Dominick.

      Plaintiffs were prohibited from bringing claims against Bordier and Dominick for aiding

and abetting these violations of section 10(b) and Rule 10b-5 pursuant to the Supreme Court's

decision in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164

(1994), in which the Court held that private plaintiffs could not bring aiding and abetting claims

under section 10(b) and Rule 10b-5.  See Central Bank, 511 U.S. at 1455.

Thus, Plaintiffs instead bring state law claims against Defendants for aiding and abetting Kyprianou and Poyiadjis' breach of fiduciary duty.  Further, Plaintiffs alleged that Defendants violated Swiss money laundering laws.  The basis for the Swiss law claims is essentially that Defendants knew that the transactions performed in the accounts in question at Defendants' banks bore all of the hallmarks of classic money laundering.  Specifically, Plaintiffs claim that Defendants knew that the assets in the accounts did not belong to the entities whose names were on the accounts.  According to Plaintiffs, Defendants violated their duties under Swiss money laundering laws to investigate these transactions given these red flags.

**C.    Defendants' Motion to Dismiss**

The instant motion to dismiss pursuant to SLUSA raises the following issues which will be discussed below:

(1)    whether this action, brought by the Trustees on behalf of a class AremisSoft investors is a "covered class action" pursuant to SLUSA;

(2)    whether SLUSA preempts claims where Plaintiffs allege that third parties, as opposed to Defendants, made misrepresentations and omissions of material fact;

(3)    whether Plaintiffs' claims that Defendants violated Swiss law are preempted by SLUSA; and

(4)    whether the Plaintiffs bring any claims on behalf of the debtor-corporation, AremisSoft, itself and if so, whether those claims are preempted by SLUSA.

**1.    Covered Class Action**

The first issue is whether this action, brought by the Trustees on behalf of a class of AremisSoft investors is a "covered class action" pursuant to SLUSA.  A "covered class action" is essentially a lawsuit where damages are sought on behalf of more than fifty people or prospective

11

class members.  See 15 U.S.C. § 78bb(f)(5)(B).  The statute does not limit "covered class

actions" to those traditionally brought pursuant to Fed. R. Civ. P. 23.  Compare 15 U.S.C. §

78bb(f)(5)(B)(i)(I) with § 78bb(f)(5)(B)(i)(II).  The statute further provides that an entity will be

considered "one person" under SLUSA (and thus, its claims will not be preempted) if the "entity

is not established for the purpose of participating in the action."  15 U.S.C. § 78bb(f)(5)(B), (D).

　　　　Plaintiffs argue that this is not a covered class action because the Trust, as represented by

the Trustees, was not "established for the purpose of participating in the action."  Instead,

according to Plaintiffs, the Trust is a bankruptcy trust that was created for multiple purposes and

certainly not created to participate in the particular action at hand.   The case law illustrates that

while a traditional bankruptcy trustee constitutes "one person" under SLUSA and thus, its claims

are not subject to preemption, see Golub, 379 F. Supp. 2d at 643 n.4 (citing S. Rep. No. 105-182

at 8 (May 4, 1998)), a trustee formed for the primary purpose of litigating causes of action does

not constitute "one person" and thus, its claims may be preempted under SLUSA, see Smith v.

Arthur Anderson LLP, 421 F.3d 989, 1007-08 (9ᵗʰ Cir. 2005); Cape Ann Investors LLC v.  v.

Lepone, 296 F. Supp. 2d 4, 10 (D. Mass. 2003).

　　　　This distinction is evidenced by the courts' respective holdings in Cape Ann and Smith.

In Cape Ann, the District of Massachusetts found that a trust created by a bankruptcy court

whose primary purpose was prosecuting causes of action for the benefit of certain shareholders

who assigned their claims to the trust was not "one person" under SLUSA and thus, its claims

were subject to preemption.  See Cape Ann, 296 F. Supp. 2d at 10.  In particular, the agreement

which formed the trust in Cape Ann provided that the trust was formed for the primary purpose

of "prosecuting the Causes of Action contributed to it . . . and distributing to the [Electing

Shareholders] the assets of the Trust . . . .".  Id.  Accordingly, the Cape Ann court found that the trust was similar to a shareholder class representative.  See id.

The Cape Ann court explicitly rejected the argument that Plaintiffs make in this case, namely, that the trust must be formed for the purpose of pursuing the particular action at hand to trigger SLUSA preemption.  See id.  The court stated that this argument "makes no sense conceptually or legally."  Id.  The Court agrees with this finding.  Logically, a trust formed for the primary purpose of litigating causes of action which subsequently brings such a cause of action must be considered a trust formed for the primary purpose of "participating in the action" under SLUSA.  Contrary to Plaintiffs' assertions, this interpretation is therefore consistent with the plain meaning of SLUSA.  Plaintiffs provide no case law which supports their limited reading of SLUSA in this context.[6]

The United States Court of Appeals for the Ninth Circuit agreed with the central premise of Cape Ann in Smith.  In Smith, a trustee was appointed pursuant to Chapter 11 bankruptcy proceedings.  See Smith, 421 F.3d at 995-96.  Under the debtor's plan, which appointed the trustee, the trustee was appointed to act "as the Estates' representative for all purposes (emphasis added)" such as managing assets, prosecuting and settling claims, administering disputed claim reserve, and making distributions pursuant to the terms of the debtor's plan.  See id. at 1008.  The

---

[6]  In Golub, the court found that where a group of persons assigned their claims to a representative through private contractual negotiations, such constituted a "covered class action" under SLUSA.  See Golub, 379 F. Supp. 2d at 643 n.4.  The court, however, did not hold that SLUSA's scope was *limited* to situations where plaintiffs assigned their claims to a representative for the purpose of litigating a particular cause of action.  In fact, a reading of Golub indicates that it found just the opposite.  See id. at 641, 644 (holding that plaintiff's state law claims were preempted by SLUSA even though breach of contract claim arose from conduct that occurred after representatives were appointed under agreement to represent interest of class of securities sellers).

<u>Smith</u> trust did not receive assignments of claims from shareholders and instead, pursued claims if at all on behalf of the bankruptcy estate itself.  <u>See id.</u> at 996 ("the Trustee was appointed as the representative of the bankruptcy estates").

The <u>Smith</u> court agreed with <u>Cape Ann</u> that a trustee formed for the primary purpose of pursuing causes of action is not "one person" pursuant to SLUSA and thus, its claims would be subject to preemption.  <u>See id.</u> at 1007 ("However, one district court has suggested that an entity is not one person if its 'primary purpose' is to pursue causes of action . . . .We adopt this sensible definition." (citing <u>Cape Ann</u>, 296 F. Supp. 2d. at 10)).  However, the Court in <u>Smith</u> found that the Chapter 11 trustee qualified as "one person" under SLUSA because it was explicitly formed for *all purposes*, not for the primary purpose of pursuing causes of action.  <u>See id.</u> at 1008.

Based on the foregoing, the Court finds that the instant action is a "covered class action" under SLUSA.  The Liquidating Trust Agreement approved by the Court which created the Trust that Plaintiffs act as Trustees of, explicitly states the following in section 1.3:

> Purpose of the Trust.  The Trust is organized for the primary purpose of litigating the Trust Claims, distributing the proceeds of the Trust Claims and the Proceed Assets to the Class Members and liquidating its assets for the benefit of the Class Members . . . .

<u>See</u> Liquidating Trust Agreement § 1.3.  This language is similar to the language in the agreement which created the <u>Cape Ann</u> trust:

> Purposes of the Trust.  The Trust is established for the primary purposes of prosecuting the Causes of Action contributed to it . . . collecting and reducing to cash the Trust Assets, determining and satisfying any and all liabilities (if any) created, incurred, or assumed by the Trust and distributing to the Class 6 beneficiaries the net cash proceeds remaining after payment of all claims against or assumed by the Trust . . . .

<u>See</u> Nutramax Litigation Trust Agreement § 3.1.

14

Thus, contrary to Plaintiffs' assertions that the instant Trust is distinguishable from the Cape Ann trust because the Cape Ann trust was formed for the sole purpose of litigation, these two trusts appear to have been formed for very similar purposes, the primary purpose of which was to pursue causes of action after receiving assignments of claims from individual shareholder beneficiaries.[7]  Accordingly, the Trust is distinguishable from the Smith trust which had standing to bring claims only on behalf of the bankruptcy estate.  The bankruptcy trustee in Smith did not receive an assignment of claims from a class of shareholders pursuant to a class action settlement as in the instant case and in Cape Ann.  Instead, the Smith trust was formed to be the bankruptcy estate's representative for all purposes.  Therefore, by the terms of its creation, the Trust, like the Cape Ann trust, functions more like a shareholder class representative than a traditional bankruptcy trustee, pursuing this litigation on behalf of a class of approximately 6,000 persons.

Accordingly, the Court finds that the Trust, represented by the Trustee, was formed for the primary purpose of litigating causes of action and thus, does not constitute "one person" pursuant to SLUSA.  Therefore, this is a covered class action pursuant to SLUSA and Plaintiffs' claims are subject to preemption.

**2.       Misrepresentations and Omissions**

The Court must next determine whether SLUSA preempts claims where Plaintiffs' allege

---

[7]  The Court notes that the opening paragraph of the AremisSoft Liquidating Trust Agreement states that the Trust is organized for the "primary purpose of liquidating the Trust Assets," which includes litigating Trust claims.  See Liquidating Trust Agreement at 1.  Although this language appears inconsistent with section 1.3 of the Liquidating Trust Agreement which sets forth the "Purpose of the Trust" and states that its primary purpose is litigating the Trust claims, in addition to distributing proceeds from such claims and liquidating assets to benefit the requisite class, any such inconsistency is immaterial.  The Liquidating Trust Agreement, like that in Cape Ann, specifically lists litigating Trust claims as a primary purpose.

that third parties, as opposed to Defendants, made misrepresentations and omissions of material

fact.  It is clear from Plaintiffs' complaint that if anyone involved in the fraudulent conduct

alleged made misrepresentations or omissions of material fact as to AremisSoft's profitability

and viability, it was Kyprianou and Poyiadjis.  Plaintiffs' complaint is replete with allegations

that Kyprianou and Poyiadjis made misrepresentations or omissions of material fact which

purportedly injured AremisSoft investors.[8]

However, it is undisputed that Plaintiffs fail to allege that Defendants Bordier and

Dominick made any misrepresentations or omissions of material fact and Plaintiffs did not bring

a Rule 10b-5 claim against Defendants as primary violators.  Further, as discussed above,

Plaintiffs could not bring claims against Defendants for aiding and abetting a violation of section

10(b) by Kyprianou and Poyiadjis pursuant to the Supreme Court's decision in Central Bank.  In

Central Bank, the Court held that private plaintiffs were prohibited from bringing aiding and

abetting claims under section 10(b) and Rule 10b-5.  See Central Bank, 511 U.S. at 1455.  Thus,

_____

[8]  For example, Plaintiffs allege the following:

"[T]he effect of the fraudulent misrepresentations [by Kyprianou and Poyiadjis] was that
the perceived value and profitability of AremisSoft was far higher than its actual value and
profitability . . . ."  Compl. at ¶ 3;

"Kyprianou and Poyiadjis and others blatantly misrepresented the value and profitability
of AremisSoft . . . ."  Compl. at ¶ 22;

 "Poyiadjis and Kyprianou caused AremisSoft to report, among other misstatements, that
the value of the NHIF Contract was $37.5 million."  Compl. at ¶ 25; and

"[t]he effect of the misrepresentations, false records, and other fraud was that the
perceived value and profitability of AremisSoft was far higher than the actual value and
profitability . . . ."  Compl. at ¶ 26.

the Court must consider whether SLUSA preempts state law aiding and abetting claims, where a third party, as opposed to the defendant, purportedly made actionable misrepresentations or omissions, even though a plaintiff has no federal securities remedy for such claims under <u>Central Bank</u>.

At the heart of this inquiry is whether, as Defendants suggest, the Court should interpret the Supreme Court's holding in <u>Dabit</u> broadly for the proposition that SLUSA preemption applies even where a plaintiff has no federal remedy.  According to Defendants, SLUSA preemption applies to state law claims where a Plaintiff is unable to bring a federal securities claim pursuant to the Supreme Court's holding in <u>Central Bank</u>.  Plaintiffs ask the Court to read <u>Dabit</u> narrowly as holding that class action claims meeting the requirements of SLUSA must be preempted where the plaintiffs lack standing to bring a federal securities claim under <u>Blue Chip Stamps</u>.  However, according to Plaintiffs, since there is no <u>Blue Chip Stamps</u> standing problem in this case, which indisputably involves purchasers of AremisSoft securities, <u>Dabit</u> does not apply.  The Court agrees with Defendant's broad interpretation of <u>Dabit</u>.

First, a narrow reading of <u>Dabit</u> would run afoul of the Supreme Court's express language and directives in <u>Dabit</u>.  As discussed above, the Supreme Court in <u>Dabit</u> emphasized that "the magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated" and that "federal law, not state law, has long been the principal vehicle for asserting class-action securities fraud claims."  <u>Id.</u> at 1509, 1514; <u>see</u> <u>also</u> <u>Kircher v. Putnam Funds Trust</u>, 403 F.3d 478, 484 (7th Cir. 2005) (stating that SLUSA's "preemptive effect is not confined to knocking out state-law claims by investors who have *winning* federal claims . . . .  It covers both good and bad securities claims — *especially* bad

17

ones"); In re Worldcom, Inc. Sec. Litig., 308 F. Supp. 2d 236, 242 (S.D.N.Y. 2004) ("[SLUSA's] findings and legislative history reflect Congress' clear purpose to provide for exclusive federal jurisdiction over a broad range of securities class actions . . . .  Congress specifically directed the courts to interpret SLUSA in an expansive fashion.").

The Court further emphasized that "a narrow reading of the statue would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose."  See Dabit, 126 S. Ct. at 1514.  In fact, the premise of the Supreme Court's holding in Dabit was that to establish that a misrepresentation or omission was made "in connection with the purchase or sale of a covered security," it is enough that the fraud alleged " '*coincide*' with a securities transaction — whether by the plaintiff or someone else."  Id. at 1513 (emphasis added) (citations omitted).  It would be illogical for this Court to therefore take a narrow view of SLUSA's requirement that the covered class action allege misrepresentations or omissions of a material fact.  In fact, the Supreme Court's discussion of the expansive reach of SLUSA preemption is in line with Congress' purpose in enacting SLUSA.  S. Rep. No. 105-182, at 8 (1998) ("it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition").  A narrow reading of the Court's Dabit decision would thus run afoul of this express language.

Second, the plain meaning of SLUSA supports Defendants' argument that SLUSA preemption applies when a third party makes the misrepresentations or omissions of fact at issue. The statute reads that no covered class action may be maintained by a private party alleging "(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) *that the defendant* used or employed any manipulative or deceptive

device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. §
78bb(f)(1)(B) (emphasis added).  Thus, Congress explicitly inserted the words "that the
defendant" into sub-section (B), but not into sub-section (A), which is at issue here.  If Congress
wanted to exempt from SLUSA preemption situations where a third party aided and abetted a
misrepresentation by a primary violator, Congress would have worded sub-section (A) to state
that SLUSA preemption applies where "*the defendant* made a misrepresentation or omission of a
material fact in connection with the purchase or sale of a covered security."   Congress did not do
so.  Instead, as discussed above, by not expressly limiting SLUSA's reach to situations where the
defendant made the misrepresentations and omissions at issue, Congress presumably intended for
SLUSA to preempt aiding and abetting claims that are otherwise barred by Central Bank.

It appears that Congress's failure to expressly limit SLUSA preemption to
misrepresentations and omissions made by the defendant was not an oversight, but an intentional
omission.  SLUSA was enacted after the Supreme Court decided Central Bank.  The Central
Bank decision, which was a significant event in the securities law field, was undoubtedly known
to Congress at the time SLUSA was enacted.  Thus, Congress presumably knew that its failure to
explicitly limit SLUSA's scope to claims where the defendant made a misrepresentation or
omission of a material fact would result in a preemption of claims for which no federal securities
remedy existed under Central Bank.  In fact, at congressional hearings prior to the enactment of
SLUSA, a SLUSA opponent expressed concern that SLUSA would preempt and bar state law
aiding and abetting claims.  See Statement of Congressmen Bart Stupak, 105th Congress, 2nd
Session, 144 Cong. Rec. H. 6052-03, 6056 (July 21, 1998), available at 1998 WL 406140 ("If
this legislation passes, it will overrule, do away, with the aiding and abetting statutes in 49

states").

Furthermore, Plaintiffs cite to no case where a court has held that for SLUSA preemption to apply, the misrepresentations or omission at issue must be made by the defendant.  Instead, all of the cases Plaintiffs cite to in support of their argument involve situations where plaintiff either failed to allege any misrepresentations or omissions; alleged only misrepresentations and omissions by the defendant or defendants at issue (and thus, not by third parties); or brought holder claims similar to those brought in Dabit.  See Disher v. Citigroup Global Markets Inc., 419 F.3d 649, 654-55 (7th Cir. 2005) (analyzing whether SLUSA preempted plaintiff's holder claims and concluding that SLUSA preemption applied); Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 44 (2d Cir. 2005) (discussing whether holder claims are preempted by SLUSA and ultimately concluding that such claims are not preempted), rev'd 126 S. Ct. 1503 (2006); Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1345 (11th Cir. 2002) (discussing whether SLUSA preempted claims of plaintiffs who purchased and held covered securities and holding that SLUSA preempts such claims); Green v. Ameritrade, Inc., 279 F.3d 590, 597-99 (8th Cir. 2002) (refusing to consider whether plaintiff's complaint alleged a misrepresentation and instead, basing its holding that SLUSA does not preempt breach of contract claim on plaintiff's failure to plead a purchase or sale in reliance on a misrepresentation);[9] Paru v. Mutual of Am. Life Ins. Co., No. 04-6907, 2006 WL 1292828, at *3-

---

[9]   The courts in both Green and Disher, when citing the standard for establishing SLUSA preemption pursuant to 15 U.S.C. § 78bb(f)(1), state that the party asserting SLUSA preemption must show "that *the defendant* is alleged to have misrepresented or omitted a material fact."   See Disher, 419 F.3d at 654; Green, 279 F.3d at 596 (emphasis added).  The decisions in this case do not rest on this SLUSA element and thus, the courts do not expand on this further.  In any event, this statement of the SLUSA standard directly contradicts the statutory language of SLUSA.  See

4 (S.D.N.Y. May 11, 2006) (remanding case for lack of SLUSA preemption where complaint did

not allege any misrepresentations or omissions and instead, merely alleged that defendant

allowed market timing to occur within investment vehicle); <u>MDCM Holdings, Inc. v. Credit</u>

<u>Suisse First Boston Corp.</u>, 216 F. Supp. 2d 251, 257 (S.D.N.Y. 2002) (holding that SLUSA did

not preempt breach of contract claim because claim did not involve any material

misrepresentations or omissions). Thus, these cases do not deal with the instant situation, where

the plaintiff seeks to hold a defendant liable for aiding and abetting the misrepresentations and

omissions made by third parties.

The only case cited by either party which seemingly addresses this issue appears to be the

Eighth Circuit's decision in <u>Prof'l Mgmt. Assoc., Inc. Employees' Profit Sharing Plan v. KPMG,</u>

<u>LLP</u>, 335 F.3d 800 (8th Cir. 2003), in which the Eighth Circuit found that the plaintiff's claims

against the defendant were preempted by SLUSA. <u>KPMG</u>, 335 F.3d at 802. In so holding, the

court determined that the defendant, KMPG, had aided and abetted a third party, Green Tree

Financial Corporation ("Green Tree"), in making misrepresentations and omissions about Green

Tree's financial condition and that KPMG made its own material false statements and omissions

in its audit reports on Green Tree's financial statements. <u>See id.</u> at 802. The court emphasized

that SLUSA applied because "[plaintiff's] complaint *implicitly* alleges that misrepresentations

and omissions were made in connection with the purchase of securities . . . . (emphasis added).

<u>Id.</u>

While the decision in <u>KPMG</u> is distinguishable from the instant case because here,

---

15 U.S.C. § 78bb(f)(1)(B).

Plaintiffs do not allege that Bordier and Dominick made any misrepresentations or omissions of their own, the Eighth Circuit's decision provides pertinent guidance to the Court.  In KPMG, the Court determined that SLUSA preemption applied to the plaintiff's aiding and abetting claims against KPMG because the plaintiff implicitly alleged misrepresentations or omissions in connection with the purchase of securities.  See id. at 802; see also In re Franklin Mutual Funds Fee Litigation, 388 F. Supp. 2d 451, 471-73 (D.N.J. 2005) (stating that plaintiff's aiding and abetting a breach of fiduciary duty claims would be preempted under SLUSA because the claims were "based, in part, on material misrepresentations and/or omissions conveyed to the public")

This decision is in line with language used by the Third Circuit in Rowinski, where the Court found that the plaintiff's breach of contract claim was subject to SLUSA preemption because although a misrepresentation was not an essential element of a breach of contract claim, "[w]here as here, allegations of a material misrepresentation serve as the *factual predicate* of a state law claim, the misrepresentation prong is satisfied under SLUSA."  Rowinski, 398 F.3d at 300 (emphasis added).  In this case, allegations of misrepresentations by Kyprianou and Poyiadjis serve as the factual predicate of Plaintiffs' claims against Bordier and Dominick.

Therefore, the Court holds that based on the reasoning of the Supreme Court in Dabit, the plain meaning of SLUSA, and the Third and Eighth Circuits' guidance on this issue, and in the absence of any case law providing contrary interpretations of SLUSA, Dabit may be read broadly to prohibit not only claims that plaintiffs are prohibited from pursuing under the federal securities laws under Blue Chip Stamps, but also claims that plaintiffs are prohibited from pursuing under the federal securities laws under Central Bank.  Accordingly, Plaintiffs' claims against Bordier and Dominick, which are based on misrepresentations or omissions of material fact made by

Kyprianou and Poyiadjis, are subject to SLUSA preemption._____

### 3.      Swiss Law Claims

Plaintiffs next argue that their claims against Bordier and Dominick pursuant to Swiss

law are not subject to SLUSA preemption because such claims are not "based upon the statutory

or common law of any State."[10]  Plaintiffs are correct that the plain language of SLUSA does not

include express language preempting foreign laws but instead, states that for preemption to

apply, the covered class action must be "based upon the statutory or common law of any State."

See 15 U.S.C. § 78bb(f)(1).  Further, Plaintiffs are also correct that pursuant to the Securities and

Exchange Act of 1934, which in addition to the Securities Act of 1933 was amended by SLUSA,

see, e.g., Smith, 421 F.3d at 1007, a "State" is defined as "any State of the United States, District

of Columbia, Puerto Rico, the Virgin Islands, or any other possession of the United States."  15

U.S.C. § 78c(a)(16).

However, Defendants correctly argue that preemption of foreign laws would be consistent

with SLUSA's expansive scope as discussed above.  It is seemingly illogical to this Court that

Congress would enact such a sweeping preemption provision like SLUSA and not intend for it to

preempt claims based on foreign law.  However, there does not appear to be any case law

governing this issue.  The only case that Defendants put forth is Kingdom 5-KR-41 Ltd. v. Star

Cruises PLC, No. 01-2946, 2004 U.S. Dist. LEXIS 3527 (S.D.N.Y. Mar. 10, 2004).  This case is

not helpful, however, because the parties agreed that foreign law, namely, Norwegian law, is

---

[10]  Plaintiffs admit that their claims against Defendants for aiding and abetting the
breaches of fiduciary duty committed by Kyprianou and Poyiadjis meet SLUSA's "based upon
the statutory of common law of any State" requirement.

"state law" for purposes of SLUSA.  See Kindgom, 2004 U.S. Dist. LEXIS 3527, at *11 n.8.

Absent any authority on this issue, and because other grounds exist for resolving this claim, the

Court declines to adjudicate the issue of whether SLUSA preempts foreign law claims.

The Court holds, however, that SLUSA does preempt Plaintiffs' Swiss law claims for the

following reasons.  First, the Third Circuit has indicated that SLUSA preempts actions, not

claims.  In Rowinski, the Third Circuit stated:

> As an initial matter, we question whether preemption of certain counts and remand of
> others is consistent with the plain meaning of SLUSA.  The statute does not preempt
> particular "claims" or "counts" but rather preempts "actions," 15 U.S.C. § 78bb(f)(1),
> suggesting that if any claims alleged in a covered class action are preempted, the entire
> action must be dismissed.

Rowinski, 398 F.3d at 305. But see Dabit, 395 F.3d at 47, rev'd on other grounds, 126 S. Ct.

1503 (2006); see also Cape Ann, 296 F. Supp. 2d at 12-13 & n.7 (holding the SLUSA preempts

claims, not entire causes of action which include a preempted claim).[11]  Thus, since Plaintiffs'

aiding and abetting action against Defendants is preempted, Plaintiffs' Swiss law claims would

also be preempted.

The Third Circuit in Rowinski, however, did not rest its holding on its observation that

SLUSA preempts actions as opposed to claims.  Instead, the court stated that "because plaintiff

has incorporated every allegation into every count in his complaint, " SLUSA applies to "each of

plaintiff's counts."  Rowinski, 398 F.3d at 305; see also KPMG, 335 F.3d at 803 (holding that

SLUSA preempts negligence claims because "[plaintiff's] allegations regarding [defendant's]

---

[11]   The Supreme Court in Dabit specifically refused to consider the issue of whether
SLUSA preempts claims or actions because it was not before the Court.  See Dabit, 126 S. Ct.
1508 n.3.

misrepresentations and omissions are incorporated by reference in the negligence count"); Prager
v. Knight/Trimark Group, Inc., 124 F. Supp. 2d 229, 235 (D.N.J. 2000) (holding that all of
plaintiff's claims were preempted by SLUSA where allegations of defendant's
misrepresentations and fraudulent conduct are incorporated by reference in each cause of action
in plaintiff's complaint).

Although Rowinski, and the other cases cited above, did not involve the issue of
SLUSA's applicability to foreign law claims, the Court applies the directives of Rowinski to this
case.  In their complaint, Plaintiffs state in their Swiss law counts that they "reallege and
incorporate by reference herein in their entirety the allegations contained in the foregoing
paragraphs."  The foregoing paragraphs contain Defendant's allegations supporting their claims
against Defendants for aiding and abetting Kyprianou's and Poyiadjis' breaches of fiduciary duty,
which indisputably are based upon state law as such is defined in SLUSA.  Thus, to the extent
that SLUSA preempts claims, as opposed to actions, Plaintiffs' Swiss law claims are preempted.

The Court further notes that even in the absence of Plaintiff's express incorporation by
reference as discussed above, Plaintiffs' claims are, if not dependent on Kyprianou's and
Poyiadjis's violation of state law, certainly tied so closely together with Plaintiffs' state law
claims that such claims are not independent under SLUSA.  See Zoren v. Genesis Energy, L.P.,
195 F. Supp. 2d 598, 604-05 (D. Del. 2002) (holding that SLUSA preemption applied to claims
based on fraud in connection with corporate restructuring even though such did not involve
purchase or sale of covered securities because plaintiff tied fraudulent restructuring allegations
closely together with preempted claims).  It is apparent from Plaintiffs' complaint that had
Kyprianou and Poyiadjis not engaged in the purported fraudulent scheme, Defendants would not

be facing liability for violating Swiss law.

Thus, the Court holds that Plaintiffs' Swiss law claims are preempted by SLUSA.

**4.      Debtor-Corporation Claims**

Plaintiffs argue that they brought claims on behalf of the now bankrupt AremisSoft, in addition to the claims they brought on behalf of the class of former AremisSoft shareholders. They argue that AremisSoft's claims cannot be preempted under SLUSA because they are brought on behalf of a single entity. The Court disagrees with Plaintiffs and finds that Plaintiffs have not pled any claims on behalf of AremisSoft and even if they did, such claims are preempted by SLUSA.

First, Plaintiffs' assertion that it pled claims on behalf of AremisSoft appears to be merely an artful way of saving its claims from SLUSA preemption. See Rowinski, 398 F.3d at 300 (indicating that courts should not allow artful pleading to undermine SLUSA's objectives). Plaintiffs explicitly stated in their complaint that Plaintiffs "bring this action against Bordier . . . and Dominick . . . *for the benefit of the beneficiaries of the AremisSoft Trust* . . . ." Compl. at ¶ 1 (emphasis added). Further, Plaintiffs emphasize in their complaint that any recovery of damages in the instant lawsuit will be distributed to the class of former AremisSoft shareholders: "net proceeds from *all claims recovered by the AremisSoft Trust* will be distributed proportionally *to the beneficiaries of the AremisSoft Trust*," Compl. at ¶ 20 (emphasis added), and "beneficiaries of the AremisSoft Trust, who number over 6,000 persons and entities . . . are entitled under the Plain to recover *100%* of these damages . . . ., Compl. at ¶ 27 (emphasis added). Therefore, no damages are claimed on behalf of AremisSoft itself. Instead, any damages recovered by

Plaintiffs will benefit a class of more than fifty persons.  Plaintiffs' bald contentions that it is pursuing this action on behalf of AremisSoft therefore lacks any factual support and is entirely contradictory with the method of recovery Plaintiffs pursue in this action.  Further, the Court rejects Plaintiffs' assertion that the fact that the beneficiaries will recover any damages awarded in this action is irrelevant because the claim is "fundamentally corporate" in nature.  Cf. Rowinski, 398 F.3d at 301 (indicating that plaintiff's theory of damages is relevant to the issue of SLUSA preemption and that Plaintiff cannot undermine the goals of SLUSA by artful pleading).

The Court respectfully declines to adopt the Cape Ann court's holding on this point.  In Cape Ann, the court held that claims brought by a trust plaintiff on behalf of a bankrupt corporation were not preempted even though any recovery from such claims would be for the sole benefit of a class of shareholders who assigned their claims to the trust.  See Cape Ann, 296 F. Supp. 2d at 12-13.  The court emphasized that one must look at the "fundamental character" of the claim, which the court found to be corporate in nature.  See id.  This holding is inconsistent with the broad, expansive reach of SLUSA and with the Third Circuit's directive in Rowinski to not only consider plaintiff's theory of damages in applying SLUSA, but also to make certain not to allow a plaintiff to circumvent SLUSA by artful pleading.

To the extent that Plaintiff has pled any claims on behalf of AremisSoft itself, the Court again points out that under the Third Circuit's discussion in Rowinski outlined above, it is likely that the Third Circuit would find that SLUSA preempts actions as opposed to claims.  See Rowinski, 398 F.3d at 305.  Thus, because Plaintiffs' aiding and abetting claims against Defendants asserted on behalf of the relevant class of former AremisSoft shareholders are preempted by SLUSA, any claims asserted on behalf of AremisSoft itself would also be

27

preempted.

     Accordingly, the Court holds that Plaintiff has not asserted any claims on behalf of AremisSoft and to the extent that they assert such claims, they are preempted by SLUSA.

**III.**    **Conclusion**

     In conclusion, for the foregoing reasons, the Court dismisses Plaintiffs' claims pursuant to the preemption provisions of SLUSA.  An appropriate order accompanies this opinion.


DATED:       September 11, 2006

                                       /s/ JOEL A. PISANO
                                       United States District Judge


Original:     Clerk
cc:          Judge Hughes
               All Parties
               File